**HUNTER PYLE, SBN 191125**
**KATHERINE FIESTER, SBN 301316**
HUNTER PYLE LAW
428 Thirteenth Street, 11th Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
hunter@hunterpylelaw.com
kfiester@hunterpylelaw.com

**MONIQUE OLIVIER, SBN 190385**
**KATHARINE CHAO, SBN 247571**
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, California 94133
Telephone: (415) 484-0980
Facsimile: (415) 658-7758
monique@osclegal.com
kathy@osclegal.com

Attorneys for Plaintiff EVAN TOOLAJIAN and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EVAN TOOLAJIAN on behalf of himself and all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>AIR METHODS CORPORATION, a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:18-cv-06722-AGT<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     July 10, 2020<br>Time:    10:00 a.m.<br>Ctrm.:   A, 15th Floor<br>Judge:   Hon. Alex G. Tse |

# NOTICE OF MOTION AND MOTION

TO THE ABOVE-CAPTIONED COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiff Evan Toolajian ("Plaintiff") individually and on behalf of all similarly situated individuals, hereby moves the Court to grant Plaintiff's Motion for Final Approval of Class Action Settlement ("Motion"). Defendant Air Methods Corporation ("AMC") does not oppose this motion. Hearing on this motion will be held on July 10, 2020 at 10:00 a.m. in the Courtroom of the Honorable Alex G. Tse, located at the United States District Court for the Northern District of California, San Francisco Division, U.S. Courthouse, Courtroom A, 15th Floor, 450 Golden Gate, San Francisco, California 94102.

Specifically, Plaintiff moves the Court for an Order:

1. Finally approving the Joint Stipulation and Settlement of Class Action Claims ("Settlement") in the above-captioned case;

2. Finally certifying the Settlement Class, for the purposes of the Settlement;

3. Finally approving the payment of reasonable costs of administration to Simpluris, Inc. from the Settlement Amount;

4. Entering a final judgment consistent with the terms of the Settlement; and

5. Retaining jurisdiction over the Parties to enforce the terms of the judgment.

This motion is made pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The basis for this motion is that the proposed non-reversionary, non-claims-made Settlement is fair, adequate, and reasonable, and in the best interests of the Settlement Class Members as a whole, and that the procedures proposed by the Parties have ensured adequate notice to the Settlement Class Members of their right to participate in, opt-out of, or object to the Settlement.

This motion will be based on the following documents, all filed herewith: the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; the Declaration of Hunter Pyle in Support of Motion for Final Approval of Class Action Settlement; the Declaration of Sean T. Kingston Regarding Class Information; the Declaration of Nick Castro

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Regarding Settlement Notice Administration; the Declaration of Joan Graff; such evidence or oral argument as may be presented at the hearing; and the complete record and file herein.

Dated: June 5, 2020                                      HUNTER PYLE LAW


                                                         By: /s/ Hunter Pyle
                                                             Hunter Pyle
                                                             Katherine Fiester

                                                         OLIVIER SCHREIBER & CHAO, LLP


                                                         By:  /s/ Monique Olivier
                                                             Monique Olivier
                                                             Katherine Chao

                                                         Attorneys for Plaintiff and the Putative Class

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1

## **TABLE OF CONTENTS**

I.     Introduction ..........................................................................................................1

II.    Summary of the Litigation.................................................................................2

       A.     The Initial Proceedings .........................................................................2

       B.     Discovery and AMC's Motion For Summary Judgment ...........................3

       C.     The Settlement Process.........................................................................3

       D.     Preliminary Approval, Additional Class Members, and Notice Process....................4

              1.     Preliminary Approval .................................................................4

              2.     The Increased Class Size Has Minimal Impact on The Overall Class Statistics.................................................................4

              3.     Notice Process ..........................................................................6

III.   Summary of Settlement Terms ..........................................................................7

IV.    The Settlement Warrants Final Approval .........................................................9

       A.     The Settlement is Fair, Adequate, and Reasonable ...............................9

              1.     The Strength of Plaintiff's Case ..............................................10

              2.     Risk, Expense, Complexity, and Duration of Further Litigation .................10

              3.     Risk of Maintaining Class Action Status....................................11

              4.     The Amount Offered In Settlement Given Realistic Value of Claims In Light of The Litigation Risks.................................12

              5.     Discovery Completed and The Status of Proceedings .................12

              6.     The Experience and Views of Counsel ......................................13

              7.     The LWDA Has Been Notified and Has Not Objected To The Proposed Settlement .................14

              8.     The Reaction of The Class Members to The Proposed Settlement. ..............14

       B.     There are No Signs of Collusion .........................................................14

V.     The Class Certification Entered by The Court in its Preliminary Approval Order Should be Maintained..................................15

VI.    The Court-Ordered Notice Comports with Due Process ....................................16

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

VII.    Conclusion ................................................................................................................17

Case No.: 3:18-cv-06722-AGT

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**CASES**

*Charron v. Pinnacle Grp. N.Y. LLC*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................. 16

*Chun–Hoon v. McKee Foods Corp.*
    716 F. Supp. 2d 848 (N.D. Cal. 2010)................................................................. 10

*Churchill Village, L.L.C. v. General Electric*
    361 F.3d 566 (9th Cir. 2004) ................................................................................ 16

*Class Plaintiffs* v. *City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ................................................................................ 9

*Dennis v. Kellogg Co.*
    697 F.3d 858 (9th Cir. 2012) ................................................................................ 14

*Edwards v. City of Long Beach*
    2011 WL 13180208 (C.D. Cal. Oct. 31, 2011) ................................................... 12

*Eisen v. Carlisle & Jacqueline*
    417 U.S. 156 (1974) ............................................................................................. 16

*Franklin* v. *Kaypro Corp.*
    884 F.2d 1222 (9th Cir. 1989) ................................................................................ 9

*Hanlon v. Chrysler Corp.*
    150 F.3d 1001 (9th Cir. 1998) .............................................................................. 14

*In re Bluetooth Headset Prod. Litig.*
    654 F.3d 935 (9th Cir. 2011) ................................................................................ 14

*In re Heritage Bond Litig.*
    546 F.3d 667 (9th Cir. 2008) .................................................................................. 9

*In Re Omnivision Technologies, Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................................... 13

*In re Pacific Enterprises Securities Litigation*
    47 F.3d 373 (9th Cir. 1995) ................................................................................. 13

*In re Portal Software Inc. Securities Litig.*
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .................................................... 11

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008) ................................................................................ 9

*Marshall v. Holiday Magic, Inc.*
    550 F.2d 1173 (9th Cir. 1977) .............................................................................. 14

*National Rural Telecom. Coop. v. DIRECTTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004)............................................................................ 10, 12, 14

*Nelson v. Avon Prod., Inc.*
    2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ........................................................ 10

*Ortega v. J.B. Hunt Transp., Inc.*
    2018 WL 6118572 (C.D. Cal. Aug. 7, 2018) ........................................................ 11

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) .................................................................... 9, 10, 14

*Roes, 1-2 v. SFBSC Management, LLC*
    944 F.3d 1035 (9th Cir. 2019) ............................................................................ 14, 15

*Schiller v. David's Bridal, Inc.*
    2012 WL 2117001 (E.D. Cal. 2012) ................................................................ 15

*Wren* v. *RGIS Inventory Specialists*
    2011 WL 1230826 (N.D. Cal. April 1, 2011) ........................................................ 9

**STATUTES**

California Labor Code
Section 2698 ............................................................................................................ 2, 3

**RULES**

Federal Rule of Civil Procedure
Rule 23............................................................................................................ passim

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Evan Toolajian ("Plaintiff") submits the following memorandum of points and authorities in support of his motion for final approval of the class action settlement in the above-captioned matter.

## I.    INTRODUCTION

By this motion, Plaintiff seeks final approval of a classwide settlement ("Settlement") reached between him and Air Methods Corporation ("AMC") (collectively, the "Parties").[1] The Settlement resolves a class action lawsuit pending before this Court (the "Litigation"), in which Plaintiff has alleged various wage and hour violations.

The Court granted preliminary approval of the Settlement on April 24, 2020. Dkt. No. 54. Plaintiff now respectfully requests that this Court grant final approval to this non-reversionary class action settlement, in which AMC has agreed to pay One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) to the following Class, consisting of 344[2] Class Members:[3]

All current and former Pilots employed by Air Methods Corporation in California at any time during September 20, 2014 to April 24, 2020.

As explained herein, the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class. Under the Settlement AMC will pay a non-reversionary gross Settlement Amount of One Million Seven Hundred Fifty Dollars ($1,750,000), plus, as explained in more detail below, an additional One Thousand Dollars ($1000) to cover the increased costs of administering the Settlement. After court-approved deducting administration costs, attorneys' fees, verified costs, a Class Representative Service Payment, and payment to the Labor & Workforce Development Agency ("LWDA"), the Net Settlement Fund ("NSF") will be

---

[1] The Joint Stipulation of Class Action Settlement and Release ("Settlement") is attached to the Declaration of Hunter Pyle in Support of Plaintiff's Motion for Final Approval of Class Settlement ("Pyle Decl.") as Exhibit 1.
[2] This number is higher than the number of Settlement Class Members estimated in Plaintiff's Motion for Preliminary Approval. However, as explained below in section II(D)(2), the effect of the additional Settlement Class Members is minimal because they worked a relatively small number of workweeks during the Class Period.
[3] All capitalized terms herein have the same meanings as those in the Settlement.

distributed to all Settlement Class Members who have not opted out ("Participating Class Members").

Participating Class Members do not need to file a claim to reap the Settlement's financial benefits, as all Class Members will automatically receive a payment unless they affirmatively opt-out. Pyle Decl., ¶ 33. Further, rather than facing the inherent risks of continued litigation and trial, the Class will be paid as soon as the Settlement becomes final.

The fairness of the Settlement is further evidenced by the fact that the Settlement exceeds Plaintiff's calculation of the reasonable settlement value of the claims.  Pyle Decl., ¶ 46.

Additionally, Class Counsel conducted extensive discovery, motion practice, and extensive arm's-length negotiations prior to reaching the Settlement. *See* Pyle Decl., ¶¶ 20-26. The Parties exchanged and reviewed thousands of pages of documents and Plaintiff took the depositions of two corporate designees.[4]  *Id.* at ¶ 22. Moreover, the Parties fully briefed AMC's first summary judgment motion related to a critical defense in this matter, which Plaintiff ultimately defeated. Dkt. Nos. 24, 27, 30-32. Thereafter, the Parties agreed to attend a settlement conference and reached the Settlement with the assistance of the Honorable Jacqueline S. Corley after months of negotiations following the conference.  *Id.* at ¶¶ 24-26.

For these reasons, as set forth more fully below, Plaintiff respectfully requests that the Court grant Plaintiff's motion for final approval of the Settlement.

## II.    SUMMARY OF THE LITIGATION

### A.  The Initial Proceedings

Class Counsel conducted extensive investigation into the facts of this case and filed the original complaint on September 20, 2018 in Alameda County Superior Court. The complaint alleged claims under the California Labor Code and Wage Order 9 for unpaid wages, meal and rest period violations, failure to reimburse for business expenses, and non-compliant wage statements on behalf of Plaintiff and all AMC pilots in California. Plaintiff subsequently gave notice to the California Labor Workforce Development Agency ("LWDA") to administratively

---

[4] Further detail regarding Plaintiff's investigation is included in Plaintiff's motion for preliminary approval. *See* Dkt. No. 45.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    exhaust his related civil penalty claims under the California Private Attorneys General Act, Labor

2    Code § 2698 et seq. ("PAGA").  Pyle Decl., ¶¶ 17-18.

3        On November 5, 2018, AMC removed the action to this Court under the Class Action

4    Fairness Act, the Railway Labor Act ("RLA"), the Airline Deregulation Act, and the "federal

5    enclave" doctrine. *See* Dkt. No. 1.  The Parties consented to the jurisdiction of a Magistrate Judge

6    for all purposes. Pyle Decl., ¶ 19.

7        After an initial Case Management Conference, Plaintiff filed his First Amended

8    Complaint with leave of Court to add allegations and claims under the Private Attorneys General

9    Act, Labor Code §§ 2698, *et seq*. Dkt. No. 18. AMC filed an Answer on March 14, 2019, and an

10   amended answer on April 4, 2019. Dkt. Nos. 20-21; Pyle Decl., ¶ 20.

11   **B.  Discovery and AMC's Motion for Summary Judgment**

12       On April 22, 2019, AMC filed a motion for summary judgment, seeking to resolve

13   AMC's preemption defense based on the RLA. Dkt. No. 24. The Parties agreed to a discovery

14   schedule that would facilitate resolution of this motion and permit further evaluation of the claims

15   and defenses.

16       Plaintiff conducted substantial discovery related to AMC's summary judgment motion,

17   including reviewing thousands of pages of documents. Plaintiff also took the depositions of two

18   30(b)(6) witnesses regarding AMC's timekeeping and pay practices for Class Members. Pyle

19   Decl., ¶ 22. The Parties also engaged in numerous meet and confer efforts to facilitate the

20   production of information and documents. *Id*. Plaintiff filed his opposition on June 21, 2019. Dkt.

21   No. 27.

22       The Court, the Honorable Elizabeth Laporte presiding, heard AMC's motion for summary

23   judgment on August 6, 2019. Dkt. No. 31. The Court then denied AMC's motion for summary

24   judgment, finding that Plaintiff's claims were not preempted by the RLA. Dkt. No. 32.

25   **C.  The Settlement Process**

26       Following the Court's order denying summary judgment, the Parties agreed to attend a

27   settlement conference with Judge Corley. Dkt. No. 33. Prior to the Settlement Conference, Class

28   Counsel engaged in extensive factual and legal research related to the strength of the claims and

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

defenses and related to damages. Pyle Decl., ¶ 25. Plaintiff also retained an expert to calculate damages for settlement purposes. *Id.*

The Parties participated in a full day settlement conference with Judge Corley on September 11, 2019. Dkt. No. 33. While the matter did not settle on that day, the Parties reached an agreement in principle after months of continued negotiations with the assistance of Judge Corley. Pyle Decl., ¶ 26.

The Settlement is intended to result in the creation of a Settlement Class comprised of Pilots who have worked for AMC at any time from September 20, 2014 through April 24, 2020. *See* Settlement, ¶ 12; Dkt. No. 54. There are 344 Settlement Class Members. Declaration of Nick Castro Regarding Settlement Notice Administration ("Castro Decl.") ¶ 5.

### D. Preliminary Approval, Additional Class Members, and Notice Process

#### 1. Preliminary Approval

On April 24, 2020, this Court issued an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). Dkt. No. 54. The Preliminary Approval Order conditionally certified the proposed class for settlement purposes and preliminarily approved the Settlement as fair reasonable and adequate.

The Preliminary Approval Order further ordered notice to be mailed to the Settlement Class, and set a date for the Final Fairness hearing. Dkt. No. 54. The Court further appointed Simpluris, Inc. ("Simpluris") as the Settlement Administrator.

#### 2. The Increased Class Size Has Minimal Impact on the Overall Class Statistics

The total number of class members covered by this settlement is higher than originally anticipated. However, the total number of workweeks upon which the damages for settlement purposes are based has increased by less than one percent (1%). Pyle Decl., ¶ 39; Settlement, ¶ 69 (a)-(b).

At the time of the settlement conference with Judge Corley, Plaintiff estimated, based on data provided by AMC, that there were approximately 225 putative Settlement Class Members who worked a total of 27,976 workweeks. Pyle Decl., ¶ 40. In February 2020, AMC provided Plaintiff with a class list indicating that there were 169 putative Settlement Class Members who

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1  worked a total of 27,445 workweeks. *Id*. at ¶ 41; *see also* Declaration of Sean T. Kingston

2  Regarding Class Information ("Kingston Decl."), ¶ 3.

3        Then, after the Preliminary Approval Order, AMC reviewed its time and attendance data to

4  determine California shifts worked for class administration purposes. Kingston Decl., ¶ 4.

5  Through this review, AMC determined that the employee history reports it had utilized in

6  determining the class size earlier in the case did not capture pilots who were based outside

7  California, but who temporarily covered shifts in California. Kingston Decl., ¶ 5. Ultimately,

8  AMC determined that there are 344 total Settlement Class Members who worked a total of 28,170

9  workweeks.  Castro Decl., ¶ 5; Kingston Decl., ¶¶ 5-7. AMC then notified Class Counsel of this

10  discrepancy. Kingston Decl., ¶ 6; Pyle Decl. ¶ 42.

11        Critically, the impact on how much each Settlement Class Member will receive pursuant to

12  the Settlement is minimal. That is because Settlement Class Members' shares of the Settlement are

13  based upon the number of workweeks that each Settlement Class Member worked during the

14  Class Period.[5] Pyle Decl., ¶ 43; Settlement, ¶ 69 (a)-(b).

15        Specifically, because the additional Settlement Class Members only worked in California

16  temporarily and sporadically, the total number of workweeks reflected in AMC's data has only

17  risen by less than one percent (1%), from 27,976 to 28,170, as compared to the data that Plaintiff

18  analyzes for the purposes of the Settlement Conference. Similarly, the total number of workweeks

19  has risen by only 2.6%, from 27,445 to 28,170, as compared to AMC's February 2020 data.

20  Kingston Decl., ¶ 7; Pyle Decl., ¶ 44.

21        To give an example of the impact that the additional workweeks would have on a

22  hypothetical class member, assume that Ms. Smith had worked 100 workweeks, which would

23  have been .0036 of the total class workweeks based on the February 2020 data. Under the

24  previous data, Ms. Smith would therefore have been entitled to .0036 of the Net Settlement Fund,

25  or $4,160.

26  _____

27  [5] To be clear, the average amount per Settlement Class Member will go down because of the increased class size. However, the impact on each Settlement Class Member's actual payment will be minimal, as described below, because that payment depends on the number of workweeks he or

28  she worked. The average Settlement Share is $3,362.19. Castro Decl., ¶ 11.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Using the revised April 2020 data to calculate her share, Ms. Smith's 100 workweeks would amount to .0035 of the 28,170 workweeks. She would therefore be entitled to .0035 of the Net Settlement Fund, or $4,045. The difference between Mrs. Smith's shares under the two sets of workweeks is therefore approximately $115. That difference is even smaller, just $22.91, using the number of workweeks that Plaintiff relied upon at the time of the Settlement Conference (27,976). Pyle Decl., ¶ 45.

The settlement value to Settlement Class Members, therefore, remains high.  Pyle Decl., ¶ 46. In addition, as of this filing, no Settlement Class Member has opted out or objected to the Settlement.  Castro Decl., ¶¶ 9-10.  Finally, AMC has agreed to pay for the increased administration costs of One Thousand Dollars ($1000) resulting from the larger class size. Kingston Decl., ¶ 8; Castro Decl., ¶ 12 (noting that administration costs have increased from $6,000 to $7,000).

### 3.  Notice Process

On May 15, 2020, AMC provided Simpluris with a mailing list containing the name, last known address, Social Security Number, and pertinent employment information during the Class Period for the Settlement Class Members. Castro Decl., ¶ 5.

Simpluris processed and updated the mailing addresses contained in the Class List utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. Castro Decl., ¶ 6. The NCOA contains changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notices. *Id*.

On May 29, 2020, Simpluris mailed the Class Notice via First Class mail to 344 Settlement Class Members. Castro Decl., ¶ 7.

Settlement Class Members have forty-five (45) days to object or opt out of the Settlement. The deadline for filing objections or opting out of the Settlement is July 13, 2020. Settlement, ¶ 61(a), (c).

As June 4, 2020, Simpluris has received zero (0) request for exclusion from the Settlement and has received zero (0) objections to the Settlement. Castro Decl., ¶¶ 9-10.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff will file a supplemental declaration with the Court one week after the July 13, 2020 deadline to opt out or object to the Settlement with updated mailing, opt-out, and objection data.

**III.     SUMMARY OF SETTLEMENT TERMS**

1.     The Gross Settlement Amount is One Million Seven Hundred Fifty Dollars ($1,750,000) plus One Thousand Dollars ($1000) to cover increased costs of administation. That sum includes all payments to Settlement Class Members, attorneys' fees, case costs, the Class Representative Service Payment, settlement administration costs, and the PAGA payment to the LWDA. *See* Pyle Decl., ¶¶ 27-28; Settlement, ¶ 32. There are 344 Settlement Class Members. Castro Decl., ¶ 7.

2.     In a separate motion, Plaintiff seeks reasonable attorneys' fees equaling 28% of the Gross Settlement Amount, which is Four Hundred and Ninety Thousand Dollars ($490,000). *See* Dkt. No. 55. Plaintiff also seeks case costs in the amount of $12,406.54, and a Class Representative Service Payment of $10,000 for Plaintiff Toolajian. *Id.*

3.     If the Court grants these requests, the Net Settlement Fund will be **$1,156,593.46**:

| | | |
|---|---|---|
| **Gross Settlement Fund:** | **$** | **1,751,000.00**[6] |
| Less Attorneys' Fees | -$ | 490,000.00 |
| Less Costs Payment | -$ | 12,406.54 |
| Less Settlement Administration | -$ | 7,000.00 |
| Less Service Award | -$ | 10,000.00 |
| Less PAGA Payment to LWDA | -$ | 75,000.00 |
| **NET SETTLEMENT FUND** | **$** | **1,156,593.46** |

Pyle Decl., ¶ 30.

4.     Each Settlement Class Member will receive a proportionate share of the Net Settlement Fund that is equal to (i) the number of workweeks he or she worked during the Class Period multiplied by the Settlement Class Member's highest rate of pay, divided by (ii) the total number of work weeks worked by all Participating Class Members in each Class Period. Pyle

---

[6] As set forth above, AMC has agreed to pay an additional $1,000.00 to the Gross Settlement Fund to cover the administrative costs related to the increased size of the Settlement Class. *See* Kingston Decl., ¶ 8; *see also* Castro Decl., ¶ 11.

Decl., ¶ 31.

5.      The Settlement allocates One Hundred Thousand Dollars ($100,000.00) to PAGA penalties, which, pending this Court's approval, will be allocated as follows: of the Twenty Five Thousand Dollars ($25,000) allocated to the PAGA Group Members, each PAGA Group Member will receive a proportionate share of money totaling that is equal to (i) the number of workweeks he or she worked during the PAGA Period, divided by (ii) the total number of workweeks worked by all PAGA Group Members during the PAGA Period. Pyle Decl., ¶ 32. The remaining three-quarters (75%) or Seventy Five Thousand Dollars ($75,000) will be distributed to the LWDA. *Id.* at 28.

6.      This is not a claims-made settlement. All Settlement Class Members will automatically receive a share of the Settlement so long as they do not opt out. Pyle Decl., ¶ 33, Settlement, ¶ 66. PAGA Group Members are not permitted to opt out and will automatically receive a portion of the one-quarter (25%) ($25,000) payment allocated to PAGA. Settlement, ¶ 69(b).

7.      No later than seven (7) days after entry of the Final Approval, AMCs shall deposit One Million Seven Hundred Fifty Dollars ($1,750,000) in the Net Settlement Fund. Simpluris will mail settlement checks to Class Members no later than 10 days after the Effective Date. Settlement, ¶ 71(g).

8.      Checks issued to Class Members pursuant to the Settlement shall remain negotiable for a period of 180 days from the date of mailing. Settlement, ¶ 71(e). In the event that any such checks remain uncashed after the expiration of this period, or an envelope mailed to a Class Member is returned and no forwarding address can be located for that individual after reasonable efforts have been made, then the total amount of such checks shall be donated to a *cy pres* charity. Settlement, ¶ 71(f). The Parties have designated Legal Aid at Work as the *cy pres* beneficiary in this case. *Id.*; *see also* Declaration of Joan Graff; Pyle Decl., ¶ 37.

9.      The Parties request that the Court retain continuing jurisdiction over the Parties and the Class Members to enforce the terms, conditions and obligations of the Agreement, including

after entry of Judgment and that this Court be deemed the exclusive forum concerning the enforcement of this Agreement. Settlement, ¶ 79.

## IV.  THE SETTLEMENT WARRANTS FINAL APPROVAL

A proposed class action settlement can be "settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. Proc. 23(e). In order to approve this Settlement, the Court must conclude that it is both "fair, adequate and reasonable" and is the product of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008).

According to the Ninth Circuit, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs* v. *City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Franklin* v. *Kaypro Corp.,* 884 F.2d 1222, 1225 (9th Cir. 1989).

### A.  The Settlement Is Fair, Adequate, and Reasonable

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," the Court may consider some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[7] and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Pursuant to the Court's Preliminary Approval Order, Plaintiff addresses each relevant factor below. *See* Dkt. No 54 at 12 ("It can be more effective, however, to consider these factors after notice of the settlement has been sent to class members and they have had the opportunity to object or opt-out.")

---

[7] This factor is not addressed because there is no governmental participant. *See, e.g., Wren* v. *RGIS Inventory Specialists,* Case No. C-06-05778 JCS, 2011 WL 1230826 at *10 (N.D. Cal. April 1, 2011) ("Because there is no governmental entity involved in this litigation, the seventh factor is inapplicable").

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1

### 1. The Strength of Plaintiff's Case

2      Although Plaintiff maintains that his claims are meritorious and believes he would

3 ultimately succeed in obtaining class certification and prevail on the merits at trial, the litigation in

4 this action to date has informed the Parties of the risks of continued litigation. While Plaintiff

5 defeated AMC's first summary judgment motion (Dkt. No. 32), as set forth in Plaintiff's motion

6 for preliminary approval ("MPA") (*see* Dkt No. 45 at 13-15), for the purposes of settlement only,

7 Plaintiff acknowledges that this case faces significant hurdles, including problems with proof, and

8 the risks of pursuing judgment through trial and appeal.  Pyle Decl., ¶ 50.

9      "Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs

10 must overcome in making their case.'" *Nelson v. Avon Prod., Inc.*, No. 13-CV-02276-BLF, 2017

11 WL 733145, at *3 (N.D. Cal. Feb. 24, 2017) (quoting *Chun–Hoon v. McKee Foods Corp.*, 716 F.

12 Supp. 2d 848, 851 (N.D. Cal. 2010). "Similarly, difficulties and risks in litigating weigh in favor

13 of approving a class settlement." *Id*. (citing *Rodriguez*, 563 F.3d at 966).

14      Despite this risk, however, Plaintiff secured a substantial recovery for the Settlement

15 Class. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval

16 are preferable to lengthy and expensive litigation with uncertain results." *National Rural Telecom.*

17 *Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).

18      The Settlement therefore provides meaningful monetary relief to Class Members for the

19 disputed wage and hour violations. Thus, this factor supports final approval.

20      ### 2. Risk, Expense, Complexity, and Duration of Further Litigation

21      This factor also supports final approval. The Court noted in its Preliminary Approval Order

22 that "continued litigation rather than settlement presents significant risks to Plaintiff and putative

23 class members regarding recovery and would involve a considerable investment of time by the

24 Parties and their counsel." Dkt. No. 54 at 17.

25      Liability is highly contested in this matter and both sides will face significant time,

26 expenses, and risk if this action continues. Pyle Decl., ¶ 49. Although the Parties engaged in

27 extensive discovery, investigation, and law and motion practice prior to reaching a settlement,

28

there are still "barriers plaintiffs must overcome in making their case." *Id.* at ¶ 50; *see also McKee Foods Corp.*, 716 F. Supp. 2d at 851.

As noted in detail in Plaintiff's MPA, AMC denies liability on every claim. Dkt No. 45 at 13. AMC has strenuously argued that Plaintiff's unpaid wage claim is preempted by the Railway Labor Act ("RLA"). *Id.* at 17. If Plaintiff prevails on his claims in the district court an appeal would be likely. *Id.* at 15.  If AMC's defense is successful, it would also defeat Plaintiff's wage statement claim, which is contingent on his unpaid wages claim. *Id.* at 19. AMC has also raised numerous factual and legal defenses to Plaintiff's meal and rest break claims, including preemption. *Id.* at 17-18.  If successful, the defense will defeat all of Class Members' claims for meal and rest breaks. *Id.* at 18.

Moreover, the Parties would be required to expend considerable time and resources in preparation for class certification and trial. As a result, the Parties would incur considerably more attorneys' fees and costs through trial. Pyle Decl., ¶ 50. The Settlement avoids those risks and the accompanying expense. *See, e.g., In re Portal Software Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

Therefore, this factor supports final approval.

### 3.  Risk of Maintaining Class Action Status

The Court has not yet ruled on a motion for class certification. Plaintiff's motion for class certification would have been hotly contested by AMC. Absent settlement, there was a risk that there would not be a certified class at the time of trial, or that the class would be decertified prior to trial. *See, e.g., Ortega v. J.B. Hunt Transp., Inc.*, No. 207CV08336RGKAFM, 2018 WL 6118572, at *5 (C.D. Cal. Aug. 7, 2018) ("Discovery has revealed that individual issues predominate in each of Plaintiff's claims. Consequently, the Court must decertify the class.")

This factor, therefore, supports final approval.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4. The Amount Offered in Settlement Given Realistic Value of Claims in Light of the Litigation Risks

The proposed Settlement provides a substantial monetary recovery for the Settlement Class that accurately reflects the risks and defenses Plaintiff faced. Pyle Decl., ¶ 50.

At the time of the Settlement Conference, Plaintiff calculated the reasonable settlement value of the claims in this case, including the PAGA claim, to be approximately $1,613,293.77. That estimate was based on Plaintiff's calculation that Settlement Class Members had worked 27,976 workweeks. Dkt No. 45 at 21.

Given that the additional Settlement Class Members increased the workweeks by less than 1%, the proposed Settlement of $1,750,000 still exceeds Plaintiff's calculation of the reasonable settlement value of the claims. Pyle Decl., ¶ 46. As such, it is an excellent result.

Considering the risks associated with continued litigation including proceeding to trial further favors final approval. *See Edwards v. City of Long Beach*, 2011 WL 13180208, at *3, n. 5 (C.D. Cal. Oct. 31, 2011) ("[t]he reasonableness of a settlement is not dependent upon it approaching the potential recovery plaintiffs might receive if successful at trial"); *Nat'l Rural Telecomm. Corp.*, 221 F.R.D. at 527 ("a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). A certain – and substantial – result for Class Members now, rather than a possibly larger, but contingent one at some indefinite time years in the future, favors preliminary approval of the Settlement.

After deducting the proposed amounts for Court-approved Class Representative Service Payment, costs of settlement administration, allocation to the LWDA, and approved attorneys' fees and costs, the settlement requires AMC to pay an estimated Net Settlement Amount of at least One Million One Hundred Fifty Six Thousand Five Hundred Ninety Three Dollars and Forty Six Cents ($1,156,593.46) to Participating Class Members. This is an excellent result for the Class Members.

Thus, this factor weighs in favor of final approval.

### 5. Discovery Completed and the Status of Proceedings

Class Counsel have investigated the action, reviewed discovery, conducted depositions,

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

worked with an expert, and engaged in motion practice including responding to and defeating AMC's first motion for summary judgment prior to reaching the Settlement. Pyle Decl., ¶¶ 17-26.

Class counsel took the depositions of two 30(b)(6) witnesses regarding AMC's timekeeping and pay practices for Pilots. Plaintiff also retained an expert to calculate damages for settlement purposes. Pyle Decl., ¶ 22. The Parties also engaged in numerous meet and confer efforts to facilitate the production of information and documents. *Id.*

Thus, this factor also supports final approval.

### 6. The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In Re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quotation marks and citation omitted).

In addition to being thoroughly familiar with this case, Class Counsel have significant experience in handling wage and hour class actions such as this. *See* Pyle Decl., ¶¶ 3-16, 17, 47, 50-52.

Plaintiff and Class Counsel have vigorously prosecuted this case and will continue to do so. *See* Pyle Decl., ¶ 48. Information gleaned from Class Counsel's investigation informed Class Counsel's assessment of the merits and risks of the case and the benefits of the Settlement. *Id.* at ¶ 49. For purposes of Settlement, the Parties have determined that the Settlement represents a fair and reasonable compromise of disputed claims for wages and other monetary and non-monetary relief, following a reasonably thorough investigation. Settlement ¶ 53.

As discussed herein, Class Counsel conducted a thorough investigation into the facts of the case. *See* Pyle Decl., ¶ 50. Based on their independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay, the risk that AMC will prevail on its defenses, and potential appellate issues. *Id.* at ¶ 51.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    Therefore, the recommendation of Class Counsel also weighs in favor of approving the

2    Settlement.

3    **7.  The LWDA has been Notified and has not Objected to the Proposed Settlement**

4    The LWDA has been notified of the PAGA aspects of the Settlement. To date, the LWDA

5    has not objected to the Settlement. Pyle Decl., ¶ 53.

6    **8.  The Reaction of the Class Members to the Proposed Settlement.**

7    A court may infer that a class action settlement is fair, adequate, and reasonable when few

8    class members object. *See, e.g., Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir.

9    1977). "[T]he absence of a large number of objections to a proposed class action settlement raises

10   a strong presumption that the terms of a proposed class action settlement are favorable to the class

11   members." *National Rural Telecom. Coop*., 221 F.R.D. at 529.

12   The deadline for filing objections or opting out of the Settlement is July 13, 2020. As of

13   June 5, 2020, Simpluris has received zero (0) requests for exclusion from the Settlement, and zero

14   (0) objections to the Settlement. Castro Decl., ¶¶ 9-10.

15   Plaintiff will file a supplemental declaration with the Court one week after the July 13,

16   2020 deadline to opt out or object to the Settlement providing updated information regarding any

17   opt-outs of objections.

18   This factor, therefore, currently weighs in favor of final approval.

19   For all of the reasons set forth above, all of the factors identified in *Rodriguez,* 563 F.3d at

20   963, support a finding that the Settlement is fair, adequate, and reasonable.

21   **B.  There Are No Signs of Collusion**

22   In the recent case of *Roes, 1-2 v. SFBSC Management, LLC* 944 F.3d 1035, 1048–1049

23   (9th Cir. 2019), the Ninth Circuit reiterated that where, as here, the parties have negotiated a

24   settlement agreement before a class has been certified, "settlement approval 'requires a higher

25   standard of fairness' and 'a more probing inquiry than may normally be required under Rule

26   23(e).'" Quoting *Dennis v. Kellogg Co.,* 697 F.3d 858, 864 (9th Cir. 2012) (quoting *Hanlon v.*

27   *Chrysler Corp.*, 150 F.3d 1001, 1026 (9th Cir. 1998). Specifically, "such [settlement] agreements

28   must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Litig.*, 654 F.3d 935, 946. (9th Cir. 2011).

The "subtle signs" of collusion which district courts should look for include:

> (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

*Id.*

Here, none of these factors are present. For example, Class Counsel is not receiving a proportionate distribution of the Settlement. Rather, Class Counsel has requested a share of the common fund. Dkt. No. 55. That fund is all cash, and does not include any coupon-like features. *Cf. Roes 1-2,* 944 F.3d 1035 at 1053 (noting that some of the same concerns applicable to coupon settlements applied to the settlement in that case, which included dance fee payments that were arguably similar to coupons).

Furthermore, there is no clear sailing agreement. The Settlement is silent in that regard. *Cf. Roes 1-2,* 944 F.3d 1035 at 1050 (noting that "the settlement agreement included a clear sailing agreement, whereby the defendants agreed that they would not object to an attorneys' fees-and-expense award of up to $1 million").

Finally, the Settlement is explicitly non-reversionary. *See* Settlement, ¶ 66:

> The Settlement is non-reversionary, and is not on a "claims made" basis. No portion of the Settlement shall revert to, or become due and payable to, Defendant, or any person or entity other than Eligible Class Members and the LWDA., and no reversion to AMC under any circumstance.

For all of these reasons, the "subtle signs" of collusion are not present here and the Court should approve the Settlement.

## V.    THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED

In the Preliminary Approval Order the Court certified the Settlement Class for settlement purposes only. *See* Dkt. No. 54 at 8-11. The Court found that the Settlement Class met the requirements of Rule 23 (a) and Rule 23(b)(3). *Id*. Because circumstances have not changed, and

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

for the reasons set forth in the motion for preliminary approval (*see* Dkt. No. 45 at 7-10), Plaintiff

requests that the Court finally certify the Settlement Class for settlement purposes under Rule

23(e). *See Schiller v. David's Bridal, Inc.,* 2012 WL 2117001 at *8 (E.D. Cal. 2012) ("As initially

determined in the Court's preliminary approval order and as set forth above, the Rule 23(a)

requirements for class certification have been satisfied.").

## VI.    THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS

Due process requires that notice be provided to class members by the best reasonable

method available. *See Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1974). Notice is

satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those

with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village,*

*L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

In the Preliminary Approval Order, this Court found the notice procedures "ensure that

class members receive adequate notice of the Settlement and an opportunity to object or opt-out."

Dkt. No. 54 at 19:16-17.

In accordance with the notice plan and the Court's Preliminary Approval Order, on May

29, 2020, Simpluris mailed the Class Notice via First Class mail to 344 Class Members. Castro

Decl., ¶ 7. The mailing addresses contained in the class list were processed using the National

Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id*. at ¶ 6. The

NCOA contains changes of address filed with the U.S. Postal Service. *Id*. In the event that any

Class Member had filed a U.S. Postal Service change of address request, the address listed with

the NCOA was utilized in connection with the mailing of the Notice Packet. *Id*.

The Class Notice explained the claims in the litigation, the key terms of the Settlement, the

rights and releases of claims under the Settlement, the right to object to the Settlement, the right to

opt-out of the Settlement, the right to appear at the final approval hearing, the recovery formula

and expected recovery, and the contact information for Class Counsel. Castro Decl., ¶ 4, Exhibit

A. Further, the 45-day deadline to object or opt out approved by the Court in the Preliminary

Approval Order satisfies the notice requirements of Rule 23 and protects the due process rights of

the Class impacted by the Settlement. Dkt. No. 54; *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.

Supp. 2d 179, 193 (S.D.N.Y. 2012) ("Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact."); Settlement, ¶ 61(a), (c).

Simpluris' work in connection with this matter will continue with the calculation of the settlement checks, issuance and mailing of those settlement checks, and to do the necessary tax reporting on such payments.

For these reasons, Plaintiff submits that the notice procedure implemented for this Settlement meets the requirements of due process, and requests that the Court approve the payment of $7,000 to Simpluris for administering the Settlement. Castro Decl., ¶ 12.

## VII.    CONCLUSION

The Settlement is fair, adequate and reasonable. It will result in substantial payments to Settlement Class Members, is non-collusive, and was achieved as a result of informed, extensive and arm's-length negotiations between counsel for the respective Parties, who are experienced in wage and hour class action litigation. For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court grant final approval of the Settlement and enter an Order as follows:

1. Finally approving the Settlement;

2. Finally certifying the Settlement Class, for the purposes of the Settlement;

3. Finally approving the payment of reasonable costs of administration to Simpluris from the Settlement Amount;

4. Entering a final judgment consistent with the terms of the Settlement; and

5. Retaining jurisdiction over the Parties to enforce the terms of the judgment.

Dated: June 5, 2020                          HUNTER PYLE LAW

By: /s/ Hunter Pyle
Hunter Pyle
Katherine Fiester

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

OLIVIER SCHREIBER & CHAO, LLP

By:   /s/ Monique Olivier
        Monique Olivier
        Katherine Chao

Attorneys for Plaintiff and the Putative Class

***

I, Hunter Pyle, attest pursuant to Northern District Civil Local Rule 5-1(i)(3) that all signatories on this document agree to the filing's content and have authorized this filing. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 5, 2020                              /s/ Hunter Pyle
                                                            Hunter Pyle

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**